May it please the Court, my name is Erica Tomlinson, and I'm the attorney for the petitioner Ignacio O. Gonzalez. The petitioner is seeking review of two issues in this case. The first issue is whether the credibility findings below from Mr. Gonzalez's testimony and the testimony of his key witness were fatally flawed because the immigration judge never made Keep your voice up, if you will, please. Certainly, Your Honor. Okay. The immigration judge never made an explicit adverse credibility finding in the decision below. The second issue for review is whether the board erred when it upheld the immigration judge's ruling because it did not follow this Court's controlling precedent in Hernandez-Guadarrama v. Ashcroft, which held that the testimony of a self-interested witness is unreliable and cannot satisfy the government's burden of proof in a smuggling charge. When you said they didn't make an explicit adverse credibility finding, she did say that the witnesses were not to be believed, didn't she? Yes, she did. Why isn't that pretty close to being an explicit credibility finding? Well, under this Court's decision in Mendoza, Menembao v. Ashcroft, passing references to credibility are not sufficient. The judge has to make specific – provide specific cogent reasons for finding a witness not credible. So her conclusory statements that – Well, whether it was supported and whether the finding was made are two different things. You're saying she didn't make an explicit adverse credibility finding, and I'm suggesting when she said they're not to be believed, that's pretty explicit. Whether she's right or wrong is another story, but – Well, in Mendoza, Menembao, the Court said that a mere statement that the petitioner is not entirely credible would not be sufficient. Not entirely credible is not the same as not to be believed. Let me ask you another question, if I may. There was evidence that the people who were smuggled said that the petitioner was the one who was in cahoots in the process. Is that right? There was one piece of evidence, which was the videotaped statement of Ms. Abrego. Where she points the finger at the petitioner. Correct. Now, if that statement is admissible, I know you argue it was coerced, but if we were to disagree with you, if we were to hold that it's not coerced, wouldn't that be sufficient to support what the IJ did? No, I don't think it would, because even if it is admitted, the immigration judge, even under a substantial evidence standard in your review, the immigration judge has to base her findings on the record as a whole. And the petitioner and that witness successfully rebutted the statements made in that video in court. Successfully? In whose opinion? In the attirer of fact's opinion, she didn't successfully rebut it. Well, I don't think the attirer of fact didn't provide reasons. She didn't even refer to the corroborating evidence, documentary evidence that she admitted to the record, such as the statement that the other alleged smuggler made that was notarized and admitted to the record in which he concurred with the testimony of both the Respondent or the petitioner and his witness, the documentary evidence that the petitioner had legitimate business activities in Tijuana, registration from the Mexican DMV, essentially, and date stamp documents showing he was conducting legitimate business, another sworn statement from a witness who also confirmed that. She didn't even refer to that. She didn't even consider whether he had successfully explained his reasons for being there. And when the Board reviewed the immigration judge's decisions, it said that she had, which was not correct. She chose from the record what she thought made them not reliable and didn't even look at the proper explanations. And on the second issue of whether the self-interested witness's testimony can even be considered, I think that's an important fact, because the Board, this Court made that decision before the Board issued its decision, and yet the Board didn't even mention Hernandez-Guadarrama and how the testimony of a witness who has every reason to lie in that situation when they're in the custody of Border Patrol to get out of that situation. That is not enough to meet that clear and convincing evidence standard. So on both grounds, I think on the credibility ground and under Hernandez-Guadarrama. But why should we assume that the videotape statement and the prior written statements were lies and that the witnesses were self-interested? I mean, you have to first, I think, assume the truth of what they said later, which is that somehow they only made the statements because they were threatened and coerced with prosecution or with having the child removed, something. But the immigration judge didn't believe those things. I mean, she made some very explicit findings with respect to the lack of coercion by the immigration officials and the arresting officers, said that while these people may have felt one way, that these things didn't happen, they weren't threatened, they weren't told that they would be prosecuted if they didn't give testimony against your client. Well, two points. One is in the decision Hernandez-Guadarrama, the Court specifically refers to just the fact that the witness had substantial personal interest in providing the testimony she did to avoid civil penalties to get out of custody. It was a major factor in undermining the reliability of her statements. And secondly, I don't agree that the statements the immigration judge made about the credibility were explicit or clear. She actually said, the immigration judge said, that Ms. Abrego, the key witness, misinterpreted information given by the officers or may have exaggerated the meaning. That to me sounds like she actually may have believed what Ms. Abrego was saying. How could she say she doesn't believe her when she says, well, I understand what she said, but maybe she was misinterpreting it. So I don't know what the immigration judge really thought. I think that she decided to adopt the testimony of the key government witness, Officer Martin, even though when you look at his testimony, it's based essentially on his conclusions are based on speculation. He had no direct evidence that he said that Mr. Gonzales had any knowledge of smuggling. And he guessed. The immigration judge basically adopted his testimony and wrote it into her opinion. So her credibility finding on the Officer Martin is based on speculation, and her credibility finding for the key witness and the Petitioner is unclear, vague, and conclusory. Thank you. You've got about two minutes left, which you're welcome to use or reserve as you see fit. A few more statements and then I will reserve some time. In terms of the action that this Court should take, I would like to point out that based on these arguments, I think it would be appropriate for the Court to reverse the board's holding and actually vacate the order of deportation instead of remanding to the Court. This was actually the result in the Hernandez-Guadarrama case. And the reason for this is that this case is not like the majority of immigration cases where the Petitioner is seeking some sort of affirmative relief like asylum or cancellation. Rather, he's asking for termination of proceedings. And if this Court finds that they're compelled to take the witness's testimony as credible and that the videotaped statements cannot be used as evidence, there really is no other remedy except to vacate the order. There's nothing left for the Petitioner to prove or for the immigration judge to consider. I will reserve the rest of my time for about a minute. Roberts. Thank you, Ms. Donnell. Good morning, Your Honor. Good morning. My name is Jeffrey Bernstein. I represent the Attorney General of the United States. The first thing I'd like to do is put the, hopefully put the Hernandez-Guadarrama issue to bed. I've read the case a number of times, and it seems to stand for the non-unique proposition that if you're going to use an interested witness's statement, then you have to make that witness available for cross-examination. I believe that the Petitioner admits, essentially, that that's the holding of the case. I think in her argument, she attributes more grist to that case than it actually contains. With respect to the other issues in the case, the immigration judge did make two determinations. He determined not to exclude the statements, and he determined that even without the statements, and certainly with the statements, but even without the statements, there was, the government satisfied its burden of proving that Mr. Gonzalez knowingly participated in the smuggling of individuals who were not entitled to be admitted to the United States. Yeah, that's, let's think about that a minute, Mr. Bernstein. Sure. We have the video statements that come in and the other evidence, and if that's all there was in the case, that probably we would be denying the Petitioner's petitioner review. But then they come back and they say, those statements weren't true, Mr. Gonzalez was, did not have anything to do with us coming in or the false IDs or anything else. Now, apart from credibility as a technical thing aside, suppose you've got a witness that's made one statement, which they did in the videos, and then your witness has come back, or at least one, and makes a different statement later on. So you've got two different statements. I understand your argument. Yeah, the immigration judge, as every finder of fact, has to make the determination of what he will believe, what actually happened. The immigration judge reviewed the testimony of all the officials, and he reviewed it in the context of this Court's presumption that immigration officials and all administrative officials carry out their duties honestly, and that Mr. Gonzalez I guess, apart from that, if he could say, well, I just don't believe the second set of evidence, the new statements that came in. Well, in essence, that's what he had to do. You had two bits of evidence that were diametrically opposed. You had the immigration official saying, we didn't coerce anybody, we didn't yell at anybody, we didn't pound on any tables, we didn't tell them what to say, which, interestingly enough, the Petitioner's witnesses agreed to. Okay. Now, if he approaches it that way and said, I just don't believe the second set of statements, then he would not suppress the first set of statements. Those would be in evidence. That's true. The second set of statements would have been made, and I guess they're in evidence, but he said I don't believe them. And then we would look at the rest of the evidence in the case in light of the first set of statements, which are in evidence, and the people contend they are not accurate, the witnesses, but the trier fact, the I.J. says, well, I don't believe that. So then you've got that and the other evidence in the case, and you say that supports the determination made by the I.J. Well, look at the I.J. He made two determinations. He said, second, and I apologize for not speaking loudly enough, the immigration judge said even without the statement, he would have found the he would find the government to have had its burden of proof, and that's perfectly defensible, and I'm prepared to defend it. But if we want to talk about the admission of the statement again, the immigration judge, I don't think he made any specific adverse credibility determination with respect to those witnesses in those statements, but it was implicit, because after all, every finder of fact has to, when confronted with two conflicting statements, has to make an implicit determination which he's going to believe. He chose to believe the statements of the officers who had a presumption that they acted properly and found that the presumption implicitly was not rebutted, and that's perfectly supported by the evidence in the record. We have the testimony of the agents. We have the assertions that they didn't yell, they didn't coerce, and that's what would have had to have happened to have these statements excluded. There would have had to be some misconduct which rose to constitutional dimension, some coercion. There was no evidence of coercion. Even if you look at the statements of the ladies who testified and gave statements, I'm not so sure that those, their statements alone amounts to coercion of a constitutional dimension. I don't believe there's any evidence that rises to constitutional coercion in this case, and the immigration judge properly admitted the statements. The best that the Respondent can come up with is that I believe the supervisory officer was unsure. He said that he never confronted people with bad acts by a smuggler, which he did not have record evidence of, but he was a little equivocal there. But even if he had done that, that certainly doesn't amount to coercion or duress. Suppose he says, if you don't put the finger, point the finger to Mr. Gonzales, we're going to take your children away. That may well be. I mean, I'm not going to come to conclusion on that. Isn't that what she said they said? I don't think she did. She said she interpreted their statements as amounting to that, and that's what the immigration judge found, and I think that's a correct finding. You think what's a correct finding? That they interpreted the officer's statements as duress and coercion, and obviously they said that they got the impression that their kids would be taken away if they were put into proceedings. Now, the immigration officials said that in a situation like this, there would be usually no question that the two ladies and perhaps the man would be just turned around given voluntary departure. So they testified that they would never have in those circumstances alerted these people to that their children would definitely be taken away. So, again, a review of the evidence reveals that there's no evidence of coercion or duress which amounts to a constitutional violation. The immigration judge implicitly properly concluded that the presumption of regularity wasn't rebutted, and the court should affirm both the immigration judge's determination and the board's affirmation of that. But I'd like to turn, if there are no further questions on this issue, I'd like to turn to the second question, which I think is probably, in my view, perhaps not the Court's, the more important question as to whether or not the immigration judge properly determined, based upon the entire context of what happened, that none of the witnesses with respect to the testimony regarding how Mr. Gonzales and the smugglies happened to come together were credible. And he did it in the – essentially, he drew an inference, which is perfectly proper for him to do, and that inference is supported by substantial evidence. There's no evidence which compels a contrary conclusion. He relied upon the fact, and he states what he relied upon, but he relied upon the fact that Mr. Camacho never explained why he happened to come into the – didn't give a reasonable explanation as to why he came into the possession of Mr. Gonzales' documents. Mr. Camacho did say that he stole them, but that raises just a whole other set of questions. Why, if Mr. Gonzales and Mr. Camacho met at the border, was Mr. Camacho apparently so unconcerned with the fact that he had Mr. Gonzales' identification documents? Mr. Gonzales has a relatively long segmented name. So why wasn't he concerned? Why did he just not wait to cross later rather than cross with another individual who had the exact same multi-segmented name as him? Why wasn't he concerned that Mr. Gonzales wouldn't find out while they – while they were waiting that by, you know, taking a glance at the documents, that he had his document and tell immigration authorities that this guy had his documents? Mr. Camacho never explained that. There's no evidence provided there. There's also no evidence – there's also, as the immigration judge commented, on Mr. Gonzales had a lot of money on him, which he hadn't spent. And by my calculation, the amount of money he had on him represents approximately half of what was testified that the individuals paid the smugglers. How much money was it that he had on him? I think he had about $1,300. $1,500? About $1,300. $1,300. As I recall. And my recollection as a testimony was that the total bill was $2,750. Now, his explanation was that he went to buy a taxi, but he couldn't consummate the transaction. But that doesn't really make a lot of sense. He testified that he was negotiating, he negotiated a deal where he paid this much and some cash that he had plus some on his credit card. He had a deal. And then there was no explanation as to why he canceled the deal. I think he said at one point, well, he thought he could get it cheaper. But if he went down there with a main purpose to get a cab and he had a deal, why didn't he do it? So one could only guess that he had to come up with an explanation as to why he had this large amount of money. I see you're out of time. Thank you, Mr. Bernstein. Thank you, sir. Ms. Tomlinson, back to you. You've got about a minute and a half left. With respect to whether the government can meet its burden of proof without the videotaped statements, I think it's important to consider that the Board didn't just adopt the immigration judge's decision. They specifically made a statement that they relied in particular on those videotaped statements. So I think they make or break this case. With respect to Mr. Camacho not providing reasonable explanations and the Respondent's attempts to discredit the explanations that were given, I would like to point out that Mr. Camacho was available to testify that day by phone. He was not provided with a transportation letter, as the other two witnesses were, even though that was requested. But the judge did not give him the opportunity to be cross-examined. So I think that also affects the record in that he didn't – he didn't – the judge did not have the opportunity to ask him those questions. His statements coincide with Mr. Gonzales' statements. He admits stealing the documents. And I think Mr. Gonzales provided very rational and reasonable explanations for all of his actions, which he backed up with witnesses' testimony, statements in the record, documentary evidence of what he was doing down there, that shows that's what he was doing, that shows he had a legitimate purpose. Thank you very much. Mr. Bernstein, thank you. The case is argued as submitted. 0770640, Esquivel Garcia v. Holder. Each side will have 10 minutes.
judges: Bolton, Thompson, Silverman